STATE of Utah, Plaintiff and Appellee,

v.

David C. STREETER, Defendant
and Appellant.

No. 930206–CA.

Court of Appeals of Utah.

Aug. 3, 1995.

Robert K. Heineman and Brooke C. Wells, Salt Lake City, for appellant.

J. Frederic Voros, Jr. and Jan Graham, Salt Lake City, for appellee.

Before DAVIS, BILLINGS, and JACKSON, JJ.

JACKSON, Judge:

David C. Streeter challenges the trial court's denial of his motion to suppress as evidence certain post-arrest statements he made to the police. We affirm.

## BACKGROUND

On the morning of September 22, 1990, West Valley City police officers arrested eighteen-year-old David Streeter on attempted homicide and aggravated assault charges. Following the arrest, Detective Tracy Cowley interviewed Streeter at about 8:30 or 9:00 a.m. in an interview room at the police department. Two other police officers were present and Detective Cowley audiotaped the interview.[1]

At the beginning of the interview, Cowley advised Streeter of his *Miranda* rights under the Fifth and Fourteenth Amendments to the United States Constitution. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Streeter unequivocally invoked his rights to remain silent and consult with an attorney. However, Cowley continued to ask Streeter if he would talk to Cowley without an attorney. Streeter finally said he would talk, noting "I have the right to stop at any time though." The following colloquy then occurred:

TC [Cowley]: Well, I'll tell you right now that if you take that attitude with us.

DS [Streeter]: Well I ain't trying to

TC: Because we have all the witnesses we need and we know who has done what and who has done what to who. So I want the truth out of you and I want it now. Now do you understand that?

DS: Yes

TC: Who were you with tonight

DS: J.D.

TC: Who else?

DS: Some of my friends, I want my lawyer here, all you have to do is call my mom and he will be down here.

TC: You want your attorney?

DS: Yes

TC: And you don't want to talk to us?

DS: Yes

TC: O.K.

Thus ended the first interview. Officer Bob Dey escorted Streeter back to the department jail where Streeter was held with several other prisoners in a holding cell.

Dey testified that after he returned Streeter to the cell he checked on the prisoners about every fifteen minutes to monitor their activities and to ask if they needed anything (e.g., a visit to the rest room or a drink of water). Between an hour to an hour and a half after Streeter's return to the cell, during one of Dey's rounds, Streeter told Dey he wanted to talk to Detective Cowley again. Dey notified Cowley and brought Streeter back to the interview room. Cowley testified that, in between the two interviews with Streeter, he had been busy interviewing other arrestees related to the same case. Neither Cowley nor Dey had attempted to contact Streeter's mother or an attorney for Streeter.

About two hours from the end of the first interview, Cowley and Streeter met again in the company of two or three other police officers. This time, Cowley did not begin by formally advising Streeter of his *Miranda* rights, but instead reminded him of the first interview:

TC [Cowley]: Do you recall earlier that I had advised you of your rights?

DS [Streeter]: Yes

TC: And after being advised of your rights you said that you wanted to talk to a lawyer?

DS: Yes

TC: Now is it your desire and you come forth voluntarily that you want to talk to me now?

DS: Yes

1. A transcript of the taped interviews was part of the record below.

TC: And you want to talk to me without a lawyer?

DS: Yes

TC: Go ahead.

Streeter proceeded to tell his version of the events leading to his arrest, incriminating himself along the way.

■ Streeter later filed a pretrial motion to suppress his statements to Cowley as violative of the Utah and United States Constitutions. He was granted a hearing. After receiving as evidence the transcript of the two interviews and the testimony of Detective Cowley and Officer Dey, the trial court ruled Streeter's statements were admissible. The trial court found that Streeter had unequivocally invoked his *Miranda* rights, Cowley had then stopped questioning him,[2] and Streeter initiated the second interview. The trial court further concluded that Streeter knowingly and intelligently waived his *Miranda* rights and voluntarily made incriminating statements to Cowley.

Under a plea bargain agreement, Streeter pled guilty to aggravated assault, reserving under *State v. Sery*, 758 P.2d 935, 939 (Utah App.1988), his right to appeal the denial of his motion to suppress. Accordingly, Streeter challenges the admissibility of his incriminating statements under the Utah and United States Constitutions.[3] He argues he did not knowingly and intelligently waive his rights to counsel and to remain silent, and he did not make the incriminating statements voluntarily.

## ANALYSIS

Streeter asserts myriad circumstances combined to prevent him from knowingly and intelligently waiving his *Miranda* rights and from voluntarily making his incriminating statements. The most egregious circumstance he points to is Detective Cowley's continued questioning after Streeter unequivocally invoked his rights in the first interview. He argues the questioning was "threatening" and "coercive," overcoming his free will and causing him to incriminate himself in the second interview. This conclusion, he contends, is buttressed by the following circumstances: his age, lack of intelligence, and low school achievement scores,[4] along with the authorities' failure to call an attorney for him, to formally "re-Mirandize" him during the second interview, and to provide him access to a telephone and other people (e.g., his parents) during his captivity.

■ The trial court's ultimate conclusions regarding Streeter's waiver of his *Miranda* rights and the voluntariness of his statements were based on undisputed facts—in particular, the transcript of Detective Cowley's two interviews with Streeter and the unrebutted testimony of Cowley and Officer Dey; thus, we review the trial court's determinations for correctness. *See State v. Sampson*, 808 P.2d 1100, 1103 (Utah App. 1990), *cert. denied*, 817 P.2d 327 (Utah 1991), *cert. denied*, 503 U.S. 914, 112 S.Ct. 1282–83, 117 L.Ed.2d 507 (1992); *see also State v. Gutierrez*, 864 P.2d 894, 898 (Utah App.1993) ("Our review of the *Miranda* issue is non-deferential because this court stands in the

2. Based on the transcript of the first interview, we conclude this factual finding to be incorrect. *See State v. Sampson*, 808 P.2d 1100, 1103 (Utah App.1990) (noting "trial court's 'findings' based upon undisputed facts present questions of law on appeal"), *cert. denied*, 817 P.2d 327 (Utah 1991), *cert. denied*, 503 U.S. 914, 112 S.Ct. 1282–83, 117 L.Ed.2d 507 (1992). Cowley *did* continue to question Streeter even after Streeter had unequivocally invoked his *Miranda* rights.

3. In his brief, Streeter quotes article I, section 12 of the Utah Constitution as a constitutional provision "whose interpretation is determinative," Utah R.App.P. 24(a)(6); however, he failed to properly brief its applicability to the waiver and voluntariness issues in accordance with Utah

R.App.P. 24(a)(9), requiring him to submit a legal argument complete with "citations to the authorities ... and parts of the record relied on," *id.* Thus, we decline to analyze this case under the state constitution and proceed solely under the United States Constitution. *See State v. Fulton*, 742 P.2d 1208, 1211 n. 2 (Utah 1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988).

4. Evidence of Streeter's lack of intelligence and low achievement were not before the trial court; thus, we do not consider those factors in our decision. *See State v. Brown*, 856 P.2d 358, 360 (Utah App.1993) (stating failure to present pertinent evidence to trial court precludes that evidence from appellate consideration).

same position as the trial court in reviewing the transcript of an interrogation.").

■■■ The Fifth Amendment to the United States Constitution provides that "no person ... shall be compelled in any criminal case to be a witness against himself."[5] In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held police officers should safeguard this privilege by informing people of their constitutional rights before conducting custodial interrogation. *Id.* at 444–45, 86 S.Ct. at 1612. Those rights include the right to remain silent and the right to the presence of an attorney. *Id.* Interrogation must end the moment a person invokes his or her rights, and the prosecution is forbidden from using as evidence a defendant's statement taken in violation of *Miranda*'s safeguards. *Id.* However,

> [s]tatements made by a person after invoking the right[s] to counsel [and to remain silent] are admissible if (1) the accused, not the law enforcement officers, initiates the conversations in which the incriminating statements are made; (2) the prosecution shows a knowing and intelligent waiver of accused's right to counsel; and (3) the prosecution shows by a preponderance of evidence that the statements were voluntarily made.

*State v. Hilfiker*, 868 P.2d 826, 830 (Utah App.1994).

Here, it is undisputed that Streeter initiated the conversation in which he made the incriminating statements. Thus, we must decide under prongs two and three whether the State has shown Streeter knowingly and intelligently waived his rights and whether his statements were made voluntarily.[6]

■■■ We first determine whether Streeter knowingly and intelligently waived his rights by examining " 'the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused,' " *State v. Moore*, 697 P.2d 233, 236 (Utah 1985) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1046, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983)). We note that "the defendant is given the benefit of every reasonable presumption against such a waiver." *State v. Fulton*, 742 P.2d 1208, 1211 (Utah 1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988). Further, waiver may be either explicit or "inferred from a defendant's acknowledgement of the understanding of his or her rights and defendant's subsequent course of conduct." *Hilfiker*, 868 P.2d at 831; *accord State v. Pena*, 869 P.2d 932, 940 (Utah 1994).

■■■ The only evidence presented on Streeter's background and conduct was his age—eighteen—and his transcribed dialogue with Detective Cowley. We weigh those with the relevant circumstances of this case, including the facts that Cowley advised Streeter of his *Miranda* rights in the first interview, informally reminded him of those rights just two hours later, and Streeter specifically asked to speak to Cowley to initiate the second interview. *See Hilfiker*, 868 P.2d at 831. Streeter "acknowledged his rights and still proceeded to make the incriminating statements," *id.; see Fulton*, 742 P.2d at 1211. We conclude Streeter's waiver was knowing and intelligent, given that his incriminating statements were made "immediately after being informed of his rights ... and after being reminded that he still had the right to an attorney," *Hilfiker*, 868 P.2d at 831.[7]

■■■ Next, we decide whether Streeter's incriminating statements were "voluntary."

---

**5.** Although Streeter quoted the Sixth Amendment in his brief as a constitutional provision "whose interpretation is determinative," Utah R.App.P. 24(a)(6), he conceded in footnote seven of his reply brief and at oral argument that this case involves only the Fifth Amendment.

**6.** We recognize that the waiver and voluntariness analyses as set out in case law are duplicative in many respects; consequently, our waiver analysis supports our voluntariness analysis, and vice versa. However, we proceed to analyze waiver and voluntariness separately for conceptual clarity.

**7.** Streeter's age is a neutral factor in this case. *See State v. James*, 858 P.2d 1012, 1017 (Utah App.1993). Our paramount consideration is that the interview transcript shows Streeter's ability, not only to understand his *Miranda* rights, but to invoke them with clear understanding.

To determine the voluntariness of a defendant's statements we must conduct an independent review of the entire record and consider "the totality of the circumstances." *State v. Mabe,* 864 P.2d 890, 892 (Utah 1993). We have "no simple, mechanistic method for determining whether a confession is voluntary. Instead, we must examine all pertinent factors relating to both ' "the characteristics of the accused and the details of the interrogation." ' " *Id.* (citations omitted).

 Streeter asserts his incriminating statements were involuntary under the totality of the circumstances, complaining specifically that his first interview was made impermissibly coercive by two of Detective Cowley's statements: (1) "Well, I tell you right now that if you take that attitude with us," which Streeter characterizes as a threat; and (2) "[W]e have all the witnesses we need and we know who has done what and who has done what to who. So I want the truth out of you and I want it now. Now do you understand that?" Streeter contends the coercive effects of these statements continued between interviews, causing him to make incriminating statements in the second interview.[8]

After Streeter unequivocally invoked his rights, Detective Cowley continued to question him in a manner " 'reasonably likely to elicit an incriminating response from [Streeter],' " *Gutierrez,* 864 P.2d at 898 n. 3 (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980)), in violation of *Miranda,* 384 U.S. at 473–74, 86 S.Ct. at 1627 (requiring police to stop questioning upon invocation of rights). That,

along with the slightly threatening tone of the questions, may arguably have made the first interview impermissibly coercive.

Nonetheless, the overriding question here is not whether the first interview was impermissibly coercive, but whether Detective Cowley's "coercive" questioning overcame Streeter's free will, causing him to make incriminating statements in the second interview. In considering this issue, we will assume, without deciding, that the first interview was impermissibly coercive. *See Mabe,* 864 P.2d at 893.

 That an interview is coercive may not be enough, by itself, to render a defendant's incriminating statements involuntary. *Id.* "To be involuntary, there must be a causal relationship between the coercion and the subsequent confession." *Id.* Accordingly, we must determine whether a causal relationship exists between the "coercive" first interview and Streeter's incriminating statements two hours later. *See id.*

Streeter argues the coercive effects of the first interview continued for two hours, prompting him to initiate the second interview and incriminate himself. We have reviewed the record and conclude the "coercion" in the first interview did not cause Streeter to make incriminating statements in the second interview.

First, throughout the first interview, Streeter steadfastly resisted Detective Cowley's attempts to elicit incriminating statements from him, repeatedly invoking his rights. *See id.* at 894. Streeter's sophisticated responses in the first colloquy showed

---

8. Streeter also argues the authorities' failure to provide him access to a telephone and outside people (e.g., his parents) and to call an attorney for him before the second interview added to the coercive effects of the first interview. We find no evidence that Streeter requested and was denied access to a telephone and outside people. We also find no evidence that anyone attempted to call or visit him and was refused.

Further, it is true Streeter requested that Detective Cowley call his mother to obtain an attorney and Cowley did not do so before the second interview. However, Cowley was busy interviewing other arrestees and, we may infer from Officer Dey's testimony, police officers were otherwise occupied with business related to the many arrestees being held that morning. As

busy as the police officers apparently were, we do not find it unreasonable that they had not yet responded to Streeter's request before he initiated the second interview. *See State v. Bolsinger,* 699 P.2d 1214, 1217 n. 2 (Utah 1985) (finding no coercion when underlying facts showed police did not attempt to contact lawyer until an hour after defendant requested one and officers stopped trying after calling one lawyer who could not be reached).

Regarding these two issues, we find no evidence that the police conduct Streeter complains of was "physical or psychological force or manipulation ... designed to induce [him] to talk when he would not otherwise have done so," *State v. Moore,* 697 P.2d 233, 237 (Utah 1985).

his intellectual ability to make some fine distinctions concerning his rights, to perceive the context of the discussions, and to assert himself. *See State v. Miller,* 829 P.2d 132, 134 (Utah App.), *cert. denied,* 836 P.2d 1383 (Utah 1992). By itself, this shows the "coercive" questioning did not overcome Streeter's independent free will. *See Mabe,* 864 P.2d at 894; *see also State v. Hegelman,* 717 P.2d 1348, 1349 (Utah 1986) (holding confession voluntary, noting defendant showed "no signs of fear either before or after" physical scuffle with police officer).

■ Second, passage of time is a factor tending "to dissipate any lingering effects of police coercion." *Mabe,* 864 P.2d at 894. During the time between the first interview and Streeter's incriminating statements, Streeter was not pressured by the police. *See State v. Allen,* 839 P.2d 291, 300 (Utah 1992). Further, we view Cowley's initial questioning as only mildly, if at all, intimidating. *See State v. Bishop,* 753 P.2d 439, 462, 464 (Utah 1988) (holding police statements in first interview that prison inmates "would not react well when they found out that defendant 'liked to hang out with little boys' and 'sleep with little boys,'" along with statement that officer was going to "punch defendant's lights out," did not coerce defendant's confession in second interview as viewed under totality of circumstances), *overruled in part on other grounds by State v. Menzies,* 889 P.2d 393, 398–99 (Utah 1994); *Fulton,* 742 P.2d at 1211 (finding no coercion although officer "repeatedly pressed" defendant to confess); *Hegelman,* 717 P.2d at 1349–50 (holding confession voluntary although officer physically scuffled with defendant, calling him "a rapist"); *State v. Bolsinger,* 699 P.2d 1214, 1217–18 (Utah 1985) (concluding confession in second interview voluntary, although defendant invoked rights in first interview after which police continued to interrogate him in manner "border[ing] on behavior not sanctioned by constitutional guarantees"); *Miller,* 829 P.2d at 133–35 (holding confession voluntary although police promised defendant leniency and threatened him with federal charges). Thus, we do not believe Streeter's incriminating statements in the second interview were the result of Detective Cowley's questioning hours earlier.

■ Third, Streeter initiated the second interview, was reminded of his *Miranda* rights,[9] and, as we concluded above, knowing-

---

**9.** Streeter argues the informal, incomplete Miranda advisement at the beginning of his second interview violated his constitutional rights, rendering his incriminating statements involuntary. He did not *separately* raise the issue of compliance with *Miranda* in the trial court, but mentioned it in passing only as part of his waiver and voluntariness arguments. " '[T]he issues of voluntariness and compliance with *Miranda* are separate constitutional defenses.' " *State v. Bishop,* 753 P.2d 439, 463 n. 67 (Utah 1988) (quoting *United States v. Curtis,* 568 F.2d 643, 647 (9th Cir.1978)). Because we find no exceptional circumstances here, we will not consider for the first time on appeal the separate *Miranda* compliance issue. *See State v. Mabe,* 864 P.2d 890, 892–93 n. 6 (Utah 1993). However, although Streeter did not separately raise the *Miranda* issue, we will weigh the lack of a formal, complete *Miranda* warning as one detail of the interrogation under the totality-of-circumstances test. *See id.*

We note that Streeter had been fully advised of his rights at the beginning of the first interview and acknowledged he had also been advised of his rights when he was arrested. He had already heard his rights in full twice, then was reminded of them in some detail at the beginning of the second interview, when he specifically recalled invoking his rights in the first interview and

consciously chose to do otherwise. This vitiates the related concern in *Sampson,* 808 P.2d at 1100, that "[s]omeone ... who simply gets a new set of *Miranda* warnings with no acknowledgement of his prior reference to counsel may think: 'I wondered before if I should have a lawyer. My question was ignored. There's no sense in raising it again,' " *id.* at 1114 n. 23. Here, Streeter was reminded he had invoked his right to counsel in the first interview and that he was—in the second interview—choosing to talk without an attorney; thus, the police specifically acknowledged Streeter's earlier reference to counsel and gave it force.

While it may be a less troublesome method to fully and formally re-Mirandize an arrestee before each separate interview, no matter what the span in between, we do not believe the lack of formal, complete *Miranda* warnings in the second interview rendered Streeter's incriminating statements involuntary. *See State v. Carter,* 776 P.2d 886, 890 (Utah 1989) (holding confession voluntary, although implying *Miranda* rights were given only once before defendant was questioned for several hours over next two days); *cf. Mabe,* 864 P.2d at 893 n. 6 (declaring "we will consider the lack of a *Miranda* warning under the totality-of-circumstances test as ' "one detail[] of the interrogation" ' " (citations omitted)); *State v. Martinez,* 595 P.2d 897, 899–900

ly and intelligently waived those rights. *See Mabe,* 864 P.2d at 894.

Finally, Streeter's statements during the second interview show he likely initiated that interview, not because he had been coerced, but to give an exculpatory version of the events leading to his arrest. *See id.* (noting defendant's statements during police interview indicated confession caused by guilty conscience, not coercion). He tried to minimize his role in the assaults, painting a self-defense scenario. However, his statements were at odds with those of witnesses to the events.

Accordingly, we do not believe any "coercion" from the first interview caused Streeter to request the second interview and to make incriminating statements. Further, viewing the totality of the circumstances, we concur with the trial court that Streeter's incrimina-

ting statements were voluntary and did not result from improper police tactics.

## CONCLUSION

We agree with the trial court that Streeter knowingly and intelligently waived his *Miranda* rights and that he made his incriminating statements voluntarily. Thus, the trial court correctly denied his motion to suppress. Streeter's conviction is affirmed.

DAVIS, Associate P.J., and BILLINGS, J., concur.

(Utah 1979) (holding defendant advised of *Miranda* rights need not be re-advised half hour later); *State v. Snyder,* 860 P.2d 351, 358 n. 10

(Utah App.1993) (stating "it is well settled that *Miranda* warnings do not have to be recited verbatim").