2006 UT App 417

**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael BARRETT, Defendant and Appellant.**

No. 20050755–CA.

Court of Appeals of Utah.

Oct. 13, 2006.

Shelden R. Carter, Harris & Carter, Provo, for Appellant.

Mark L. Shurtleff, Attorney General, and Christine F. Soltis, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Michael Barrett appeals his convictions for rape, a first degree felony, *see* Utah Code Ann. § 76–5–402 (2003), and sexual exploitation of a minor, a second degree felony, *see id.* § 76–5a–3 (2003). We affirm.

## BACKGROUND

¶ 2 On October 10, 2004, Detective John Jackson questioned Defendant about allegations that Defendant had sexually abused a

minor.[1] Such inquiry occurred in three stages. Initially, Defendant was questioned in Detective Jackson's unmarked vehicle, during which time Defendant generally denied any wrongdoing. Secondly, after a short period of questioning in Detective Jackson's vehicle, Defendant asked to go home to talk to his wife. At Defendant's home, Defendant and his wife engaged in a conversation in Detective Jackson's presence, in which Defendant admitted that the allegations of sexual abuse were true.[2] Detective Jackson thereafter informed Defendant that he was under arrest and arranged for his transport to the police station. Thirdly, at the police station, Detective Jackson, for the first time, informed Defendant of his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), after which Defendant gave a full confession.

¶ 3 Defendant thereafter filed a motion to suppress all of his inculpatory statements, which motion was denied. On May 23, 2005, Defendant pleaded guilty to one count of rape, *see* Utah Code Ann. § 76–5–402, and one count of sexual exploitation of a minor, *see id.* § 76–5a–3. Both guilty pleas were conditioned upon his right to appeal the trial court's denial of his motion to suppress. *See State v. Sery*, 758 P.2d 935 (Utah Ct.App. 1988). This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 4 Defendant argues on appeal that all of his statements—both those made after he received his *Miranda* warnings and those made before—should have been suppressed. Respecting his post-*Miranda* statements, Defendant argues that he did not waive his *Miranda* rights but instead equivocally asked for an attorney. Defendant contends that, at that point, all questioning should have stopped except for those questions designed to clarify Defendant's purported request. The trial court based its ultimate conclusions regarding Defendant's waiver of

his *Miranda* rights and the voluntariness of his statements on essentially undisputed facts—in particular, the transcript of Detective Jackson's colloquy with Defendant; therefore, the trial court's conclusions present questions of law which we review under a correction of error standard. *See State v. Dahlquist*, 931 P.2d 862, 866 (Utah Ct.App. 1997); *State v. Streeter*, 900 P.2d 1097, 1100–01 (Utah Ct.App.1995); *State v. Gutierrez*, 864 P.2d 894, 898 (Utah Ct.App.1993).

¶ 5 Respecting the statements he made prior to receiving his *Miranda* warnings, Defendant argues that he was subjected to custodial interrogation from the moment Detective Jackson approached him. Defendant therefore contends that Detective Jackson had an obligation both to provide Defendant with *Miranda* warnings and to cease questioning when Defendant stated that he would "rather not say anything." "[C]ustodial interrogation determinations should be reviewed for correctness." *State v. Levin*, 2006 UT 50, ¶ 46.

## ANALYSIS

### I. Suppression of Post-*Miranda* Statements

¶ 6 Before turning to Defendant's specific arguments, we begin our analysis by determining the answer to an overarching question—should Defendant's full confession be suppressed simply because it followed earlier statements obtained without the benefit of the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)? Relying on *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), we conclude that the answer is no.

¶ 7 In *Elstad*, the United States Supreme Court noted that *Miranda* warnings "are not themselves rights protected by the Constitution but are instead measures to insure that the right against compulsory self-incrimination is protected." *Id.* at 305, 105

---

1. Detective John Jackson recorded the events of the evening on an audio recorder. We therefore rely upon the transcript thereof for our recitation of the facts.

2. Although Detective Jackson witnessed the conversation between Defendant and his wife, he asked almost no questions. Indeed, his input was limited almost entirely to securing the safety of the parties.

S.Ct. 1285 (quotations, citations, and alterations omitted). Because "a procedural *Miranda* violation differs in significant respects" from a constitutional violation, *id.* at 306–07, 105 S.Ct. 1285, "errors ... made by law enforcement officers in administering the prophylactic *Miranda* procedures ... should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself," *id.* at 309, 105 S.Ct. 1285. Therefore,

> a simple failure to administer the [*Miranda*] warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, [does not] so taint[ ] the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn ... solely on whether it is knowingly and voluntarily made.

*Id.* (holding that suspect who responded to unwarned yet uncoercive questioning that resulted in inculpatory admission was not disabled from waiving rights and making confession after being given *Miranda* warnings).[3]

¶ 8 Like the United States Supreme Court, Utah courts have also held that absent any coercion during the first unwarned admission, a defendant's subsequent statements are admissible if they were voluntarily made after a knowing and intelligent waiver of *Miranda* rights. *See, e.g., State v. Bishop,* 753 P.2d 439, 466 (Utah 1988) ("After the initial police interview began, defendant voluntarily answered police questions. He was read his *Miranda* rights, voluntarily and knowingly waived those rights, and continued to voluntarily answer police questions.... Since both the unwarned statements and warned statements were voluntary, and since

defendant waived his rights, his claim that the delay in reading him his *Miranda* warning affected the admissibility of his confession to the killings is unpersuasive."), *overruled in part on other grounds by State v. Menzies,* 889 P.2d 393 (Utah 1994); *State v. James,* 858 P.2d 1012, 1015–17 (Utah Ct.App. 1993) (holding defendant's post-*Miranda* confession admissible because it was not obtained by coercion, even though post-*Miranda* confession followed initial unwarned admission).

■ ¶ 9 We must therefore determine whether the statements Defendant made prior to his *Miranda* warnings were "[ ]accompanied by any actual coercion or other circumstances calculated to undermine [his] ability to exercise his free will." *Elstad,* 470 U.S. at 309, 105 S.Ct. 1285.

To determine whether a suspect's statements were coerced, courts look to the totality of circumstances. Factors to consider in examining the totality of the circumstances include not only the crucial element of police coercion, the length of the interrogation, its location, its continuity, defendant's maturity, education, physical condition, and mental health. They also include the failure of police to advise defendant of his rights under *Miranda*. *State v. Troyer,* 910 P.2d 1182, 1188 (Utah 1995) (quotations, citations, and alteration omitted).

■ ¶ 10 Considering each of the factors delineated above, we do not believe that Defendant's pre-*Miranda* statements were coerced. Beyond failing to give *Miranda* warnings at the beginning of the interview, Defendant does not allege that Detective Jackson engaged in any misconduct. Furthermore, the investigation prior to the *Miranda* warnings was brief and occurred in Defendant's home as well as in an unmarked vehicle parked in a public lot. Detective Jackson actually discontinued his questioning

---

**3.** Unlike an officer's failure to administer *Miranda* warnings, an "officially coerced" confession does amount to a violation of the Fifth Amendment. *Oregon v. Elstad,* 470 U.S. 298, 305, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (quotations and citation omitted). Therefore, "[w]hen a prior statement is actually coerced, the time that passes between confessions, the

change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Id.* at 310, 105 S.Ct. 1285. However, we do not believe that Defendant's pre-*Miranda* statements were coerced and therefore do not analyze such factors.

to drive Defendant home to speak to his wife. Finally, nothing about Defendant's maturity, education, physical condition, or mental health leads us to believe that his pre-*Miranda* statements were coerced. In short, Defendant's pre-*Miranda* statements were not "[ ]accompanied by any actual coercion or other circumstances calculated to undermine [his] ability to exercise his free will." *Elstad,* 470 U.S. at 309, 105 S.Ct. 1285.

¶ 11 Because we have determined that Defendant's pre-*Miranda* statements were not coerced, we must now examine whether his post-*Miranda* statements were voluntarily made after a knowing and intelligent waiver of his *Miranda* rights. *See Bishop,* 753 P.2d at 466; *James,* 858 P.2d at 1015–16. We determine whether Defendant "knowingly and intelligently waived his [*Miranda* ] rights by examining the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *State v. Streeter,* 900 P.2d 1097, 1101 (Utah Ct.App.1995) (quotations and citation omitted); *see also Bishop,* 753 P.2d at 466–67; *State v. Hilfiker,* 868 P.2d 826, 831 (Utah Ct.App.1994). Waiver may be either express or "inferred from a defendant's acknowledgment of the understanding of his or her rights and defendant's subsequent course of conduct." *Streeter,* 900 P.2d at 1101 (quotations and citation omitted); *see also Bishop,* 753 P.2d at 467; *Hilfiker,* 868 P.2d at 831.

¶ 12 Defendant argues that he did not waive his *Miranda* rights because he equivocally asked for an attorney, and at that point, all questioning should have stopped except for those questions designed to clarify Defendant's purported request. *See State v. Sampson,* 808 P.2d 1100, 1111 (Utah Ct.App. 1990) (holding that defendant's reference to counsel, which occurred before any waiver of

rights, constituted "an equivocal request for counsel" and therefore "it was necessary that someone clarify that equivocal request before defendant could be subjected to custodial interrogation"). However, a review of the transcript of the interrogation at the police station makes it clear that Defendant expressly waived his *Miranda* rights and that he did not even equivocally request counsel. After Detective Jackson gave Defendant his *Miranda* warnings, the following dialogue took place:

> Detective: [D]o you understand those rights that I've explained to you?
>
> Defendant: Yes.
>
> Detective: Having those rights in mind, I'd like to talk to you. Is that okay with you?
>
> Defendant: Yes.
>
> Detective: Okay.
>
> Defendant: Can I ask you a question first?
>
> Detective: Sure.
>
> Defendant: I'm guilty.... I'm not gonna fight bein[g] guilty, but although I could afford an attorney, I'm not gonna take any money away from [my wife], so I'm not gonna draw any, off of any resources of our household. So if I admit guilt, there will be no trial to establish my guilt, correct?[4]

Not only did Defendant expressly waive his *Miranda* rights by stating that Detective Jackson could talk to him, his admission of guilt immediately after acknowledging that he understood his rights also supports waiver. Furthermore, we agree with the trial court that Defendant's reference to an attorney was not a request for counsel but was instead an explanation of his decision to proceed without one.[5] Finally, nothing about

---

4. Defendant argues in passing that his post-*Miranda* statements should have been suppressed because Detective Jackson "g[a]ve legal advice" when he responded to Defendant's questions about the repercussions of a guilty plea. However, the Utah Supreme Court has held that a defendant knowingly and intelligently waived his *Miranda* rights when he confessed after receiving his *Miranda* warnings and after engaging in a detailed discussion with police "concerning the judicial system and lawyers in general." *State v.*

*Bishop,* 753 P.2d 439, 462–63, 467 (Utah 1988), *overruled in part on other grounds by State v. Menzies,* 889 P.2d 393 (Utah 1994).

5. Regardless, Defendant's reference to counsel occurred after he waived his *Miranda* rights. Although police must clarify equivocal requests for counsel that occur before a defendant waives his rights, *see State v. Sampson,* 808 P.2d 1100, 1111 (Utah Ct.App.1990), "police do not need to limit their questioning to clarifying questions

Defendant's background or experience makes us doubt that Defendant's waiver was made knowingly and intelligently.

¶ 13 We further believe that Defendant's post-*Miranda* statements were made voluntarily. We have no simple, mechanical method for determining whether a confession is voluntary. *See State v. Bishop*, 753 P.2d 439, 463 (Utah 1988), *overruled in part on other grounds by State v. Menzies*, 889 P.2d 393 (Utah 1994); *Streeter*, 900 P.2d at 1102; *Hilfiker*, 868 P.2d at 831. Rather, we must consider the totality of the circumstances and examine all pertinent factors relating to both the characteristics of the accused and the details of the interrogation. *See Bishop*, 753 P.2d at 463; *Streeter*, 900 P.2d at 1102; *Hilfiker*, 868 P.2d at 831. Although there are many factors to be considered in making the determination of voluntariness, *see Bishop*, 753 P.2d at 463–64, "[t]he ultimate inquiry is whether physical or psychological force or other improper threats or promises prompted the accused to talk when he otherwise would not have done so," *Hilfiker*, 868 P.2d at 831 (quotations and citation omitted); *see also State v. Velarde*, 734 P.2d 440, 443 (Utah 1986) ("In order for a statement to be deemed voluntary . . . , the statement must not have been elicited by threats or violence or by any direct or implied promises.").

¶ 14 Here, we are convinced that Defendant's post-*Miranda* statements were voluntary. Defendant does not even allege that he was subjected to "physical or psychological force or other improper threats." *Hilfiker*, 868 P.2d at 831 (quotations and citation omitted). Instead, Defendant challenges Detective Jackson's purported promises to not

"screw [him] over" and to keep things "between [the two of them]." But based upon a review of the transcript, it is clear that Detective Jackson never made any promises to Defendant after issuing the *Miranda* warnings.[6] Rather, it was Defendant who continually requested that statements be kept "off the record" and that the interrogation be treated as a "friend to friend" dialogue. Furthermore, there is no evidence that Defendant confessed in an attempt to garner favors from Detective Jackson. Instead, we agree with the trial court that it was "clear from the transcript"—in which Defendant stated numerous times that he wanted to be honest with Detective Jackson and that he did not want to go to trial—"that [D]efendant's concern and hope was to avoid a trial." Based on the totality of the circumstances, we do not believe that any "physical or psychological force or other improper threats or promises prompted [Defendant] to talk when he otherwise would not have done so." *Hilfiker*, 868 P.2d at 831 (quotations and citation omitted). As such, we hold that Defendant's post-*Miranda* statements were voluntary.

¶ 15 We do not believe that Defendant's pre-*Miranda* statements were coerced. Furthermore, Defendant knowingly and intelligently waived his *Miranda* rights and voluntarily confessed after receiving notice of those rights. As such, we hold that the trial court did not err in admitting Defendant's post-*Miranda* statements.

## II. Suppression of Pre-*Miranda* Statements

¶ 16 Defendant also argues that his pre-*Miranda* statements should have been

when a suspect who has previously waived his *Miranda* rights makes an ambiguous request for counsel," *State v. Galli*, 967 P.2d 930, 935 n. 4 (Utah 1998). Instead, "once a suspect has clearly, knowingly, and intelligently waived his *Miranda* rights, . . . the requirement of clarity with respect to postwaiver invocation of those rights [is] on the suspect." *State v. Leyva*, 951 P.2d 738, 743 (Utah 1997). Here, Defendant expressly waived his *Miranda* rights by stating that Detective Jackson could talk to him, and thereafter stated that he "could afford an attorney." Because the reference to counsel occurred after Defendant waived his *Miranda* rights, it was Defendant's responsibility to clearly articulate his alleged desire to have counsel present. He failed

to do so, and as such, Detective Jackson was under no obligation to cease all questions except those designed to clarify Defendant's purported request.

6. Defendant confuses the time line of events and argues that after giving Defendant his *Miranda* warnings, Detective Jackson promised Defendant that "if [sexual] things have happened [between you and the minor], I'll keep it between us." However, such promise occurred in Detective Jackson's vehicle before *Miranda* warnings were given and therefore is addressed by Section II of this opinion.

suppressed. However, because we have concluded that Defendant's post-*Miranda* confession was admissible, we need not address his argument regarding the admissibility of his pre-*Miranda* statements. "When statements obtained from a defendant after a *Miranda* waiver are deemed admissible, admission of earlier statements may constitute harmless error, if error at all." *State v. James*, 858 P.2d 1012, 1017 (Utah Ct.App. 1993); *see also Bishop*, 753 P.2d at 465 ("Where a subsequent confession is constitutionally obtained, the admission of prior inadmissible confessions may constitute harmless error." (quotations and citation omitted)). Here, Defendant's post-*Miranda* confession contained all the information from his pre-*Miranda* statements, plus additional details. Because Defendant's pre-*Miranda* statements were unnecessary to the State's case, we decline to review their admissibility. *See James*, 858 P.2d at 1017 ("[W]e need not address the admissibility of the earlier statement because any error in that regard was harmless. The second, post-*Miranda* confession rendered the earlier statement unnecessary for the State's case because the second statement contained all the information in the first statement, as well as additional detail.").[7]

## CONCLUSION

¶ 17 Defendant pleaded guilty to one count of rape, *see* Utah Code Ann. § 76–5–402, and one count of sexual exploitation of a minor, *see id.* § 76–5a–3. Both guilty pleas were conditioned upon his right to appeal the trial court's denial of his motion to suppress. *See State v. Sery*, 758 P.2d 935 (Utah Ct.App. 1988); Utah R.Crim. P. 11(i). Under *Sery*, a defendant may withdraw his guilty pleas if "[his] arguments in favor of suppression are accepted by the appellate court." *Sery*, 758 P.2d at 938. Here, we reject Defendant's arguments that his post-*Miranda* statements

should have been suppressed and we decline to review the admissibility of his pre-*Miranda* statements. Because we do not accept Defendant's arguments in favor of suppression, we affirm Defendant's conviction. *See James*, 858 P.2d at 1014, 1018 (denying withdrawal of conditional guilty plea where court affirmed admission of post-*Miranda* statement and declined to review admission of pre-*Miranda* statement).

¶ 18 Affirmed.

¶ 19 WE CONCUR: CAROLYN B. McHUGH, Judge, and GREGORY K. ORME, Judge.

---

7. Defendant mentions the Utah Constitution in passing. However, we do not address the admissibility of Defendant's statements under the Utah Constitution because we are not "simply a depository in which the appealing party may dump the burden of argument and research." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 37, 38 P.3d 291 (quotations and citation omitted); *see also MacKay v. Hardy*, 973

P.2d 941, 948 n. 9 (Utah 1998). Furthermore, "[w]e are concerned that a separate state standard might generate confusion in this area.... Therefore, we decline at this time to develop a separate constitutional standard governing admissibility of confessions under the Utah Constitution." *State v. James*, 858 P.2d 1012, 1018 (Utah Ct.App.1993) (internal citation omitted); *see also Leyva*, 951 P.2d at 743.