2018 UT App 126

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DAVID RUSSELL GARDNER,
Appellant.

Opinion
No. 20160028-CA
Filed June 21, 2018

Eighth District Court, Duchesne Department
The Honorable Samuel P. Chiara
No. 131800128

Laura J. Fuller, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

TOOMEY, Judge:

¶1 David Russell Gardner was convicted of eleven counts of first-degree felony rape against a fourteen-year-old victim (Victim). He appeals his convictions, contending the district court erred in denying his motion to suppress because his confession to police was made in violation of his Fifth Amendment rights. He also contends the district court exceeded its discretion when it rejected his guilty plea. Finally, he contends he received constitutionally ineffective assistance of counsel. We conclude Gardner knowingly and voluntarily waived his right to counsel and his confession was therefore not in violation of his constitutional rights. Gardner failed to preserve his challenge to the rejected guilty plea, and he has not

shown that his counsel's performance was deficient or that the deficient performance, if any, was prejudicial. Accordingly, we affirm.

## BACKGROUND

¶2    Victim and her mother reported to police that Gardner had raped Victim and that she was pregnant with his child.[1] During an interview at the Children's Justice Center, Victim disclosed that Gardner raped her no less than eleven times in a span of six months. Officers interviewed Victim about these allegations. They also interviewed Gardner's son, who reported he had observed Gardner sexually abusing Victim and that Gardner told him that he would kill him if he ever disclosed what he saw.

¶3    Based on these allegations, the police determined they needed to question Gardner. Two officers (First Officer and Second Officer) were in the interrogation room with Gardner. Gardner received *Miranda* warnings and he affirmed that he understood them. Gardner then asked why he was being questioned, and First Officer said it was about Victim. Gardner immediately asked for his attorney. First Officer asked if it was the same attorney who had represented him in connection with prior charges, and Gardner responded in the affirmative. Before the officers could leave to try to reach his attorney, Gardner "immediately launched into a monologue concerning an assault [against him] purportedly involving [Victim's] mother." He also explained, unprompted, that Victim's mother had threatened to report to the police that Gardner had sexually abused Victim. He

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (quotation simplified). "We present conflicting evidence only as necessary to understand issues raised on appeal." *Id.*

spoke to the officers for nearly three minutes without the officers asking any questions or responding in any way.

¶4 First Officer again asked if Gardner wanted his attorney and, when Gardner answered in the affirmative, left to try to contact the attorney. Gardner continued to speak to Second Officer, unprompted, until First Officer returned. When First Officer returned, he told Gardner that he could not reach Gardner's attorney and that he was not going to ask Gardner any questions. Despite saying this, First Officer then added, "This thing is, what you just have to think about, is that is there a possibility that this child she's carrying is yours?"[2] Gardner attempted to respond, but the officers cut him off and left the room.

¶5 Gardner sat alone in the interrogation room for almost five minutes before opening the door and asking Second Officer to return. Both officers returned and did not ask any questions, and Gardner explained that the reason he wanted his attorney present was to "corroborate his story concerning the alleged assault perpetrated on him by [Victim's] mother." He further explained that he did not need his attorney present, because "there [was] no way that baby was [his]." First Officer again left to try to reach Gardner's attorney, and Gardner continued to talk to Second Officer, who offered to take a statement from Gardner with respect to the alleged abuse by Victim's mother.

¶6 When First Officer returned, he informed Gardner that his attorney did not want to represent him in connection with these new allegations but that his attorney generally advised him to remain silent. First Officer said that Gardner's silence would not

_____

2. The State concedes on appeal that this question amounted to interrogation but argues that Gardner had already waived his right to counsel because he had already begun to talk, unsolicited, about Victim and her mother's threats to report that he sexually abused Victim.

matter, because they had enough evidence to arrest him for rape.[3] Although the officers explained that the interrogation was over because he was being arrested, Gardner asked them to remain in the room and talk with him and then posed questions about DNA testing. After discussing the different means of testing DNA, Gardner stated, "I'm taking responsibility for me. I did it."

¶7     After his arrest, Gardner filed a motion to suppress his confession, alleging that the officers violated his Fifth Amendment rights in obtaining it because the officers continued to question him after he had invoked his right to counsel. The court denied the motion because it determined that, from the beginning of the interview, Gardner's "actions clearly showed he was willing to talk to the Officers independent of counsel." Without being asked any questions, Gardner explained that he had problems with Victim's mother, and later—after again being asked if he wanted his attorney present before he continued to talk with the officers—Gardner "continu[ed] into a story involving [Victim] and her mother." The court found that only after this exchange did First Officer "initiate a question by asking [Gardner] to think if there was a possibility the child [Victim] was carrying was his." The court further found that even when the officers attempted to end the interrogation on two occasions, Gardner reinitiated the conversation with respect to Victim and

_____

3. Gardner strenuously challenges this part of the exchange with First Officer, specifically with respect to First Officer's response to the attorney's comment to remain silent: "However, that's not—that's not really going to work for us as far as that goes." Gardner contends First Officer's statement was a violation of his right to remain silent because First Officer said that the attorney's advice not to talk was "not really going to work." We construe this differently: First Officer explained that Gardner did not need to speak, because there was sufficient evidence to arrest him without any statement from him. We therefore do not address this further.

her mother. The second time, after the officers explained that they had enough evidence to arrest him,[4] Gardner asked them to stay and then confessed to the crime.

¶8    The court concluded that he "knowingly and intelligently waived his right to counsel during interrogation." In support of this conclusion, it found that Gardner had "experience in the criminal justice system" as a convicted sex offender and that "during this particular interrogation, [Gardner] was due in court on an unrelated crime." The court further found that, being familiar with his rights, Gardner "chose to speak without his attorney present after the Officers clearly warned him that he was not obligated to do so" and there was "no dispute that the *Miranda* warning . . . was adequate." The court therefore denied Gardner's motion to suppress.

¶9    On the first day of trial, Gardner attempted to enter an *Alford* plea[5] to one count of rape in exchange for dismissing the remaining charges and being sentenced that same day. The court said it was not "pleased with the deal or the timing of it,"

---

4. Gardner does not argue, and it is not apparent from the record, that this was a trick or ruse on the part of the officers. From all that appears in the record, the officers in fact did have probable cause to arrest him, given the report from Victim that was corroborated by Gardner's son.

5. An *Alford* plea, or a plea of no contest or nolo contendere, is "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." *North Carolina v. Alford*, 400 U.S. 25, 35 (1970). These pleas allow courts to impose "a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." *Id.* at 36.

because it was a significant reduction in charges.[6] The court explained that, under Utah law, it could refuse to accept a plea deal so long as the refusal was not arbitrary. The court asked the State why it offered the deal, and the State responded that, by making the deal, it would be "exchanging a sure thing for something that is not completely certain." The court was "extremely reluctant to accept the plea" in light of Gardner's stipulation that he was the father of Victim's child, the evidence presented in the motion to suppress and the State's opposition, and the fact that an *Alford* plea meant that Gardner would not be admitting guilt even to the one charge of rape. Accordingly, the court gave the State and Gardner time to negotiate a different deal, but instead, the State withdrew the deal completely. The court said, "All right," and Gardner stated, "Hold on." The court explained to Gardner that it would not have accepted the original offer "unless [Victim] was extremely reluctant or refused to testify," and because that was not the case, they would "continue with the trial." Gardner did not raise an objection but instead responded, "Thank you, Your Honor."

¶10 The jury convicted Gardner on all eleven counts of rape. Gardner appeals.

ISSUES AND STANDARDS OF REVIEW

¶11 Gardner contends the district court erred in denying his motion to suppress his confession because he was denied the right to counsel during the interrogation. We review a district court's ruling on a motion to suppress for correctness, and we

---

6. In addition to the eleven rape charges, the State charged Gardner with two counts of forcible sexual abuse and one count of retaliation against a witness, victim, or informant. Before the court gave the jury final instructions, the State dismissed the two counts of forcible sexual abuse and one count of retaliation against a witness, victim, or informant.

review its factual findings in support of its ruling for clear error. *State v. Tripp*, 2010 UT 9, ¶ 23, 227 P.3d 1251. "When a [district] court bases its ultimate conclusions concerning the waiver of [a] defendant's *Miranda* rights, upon essentially undisputed facts, in particular the transcript of an officer's colloquy with [the] defendant, its conclusions present questions of law which we review under a correction of error standard." *State v. Gutierrez*, 864 P.2d 894, 898 (Utah Ct. App. 1993) (quotation simplified).

¶12   Gardner also contends the district court exceeded its discretion when it rejected "the plea agreement reached by the parties." Gardner asserts that this issue was preserved below when the court explained its hesitation in accepting an *Alford* plea to one count of rape and then asked the parties to take time to negotiate a different plea. But this does not constitute preservation because Gardner did not challenge the "rejection" before the district court. To preserve an issue for appeal, Gardner must have raised it before the court in such a way that the court had an opportunity to rule on it. *See State v. Brocksmith*, 2018 UT App 76, ¶ 9. Here, after the State withdrew the plea deal, Gardner's only response was: "Hold on." The court again explained why it would not have accepted an *Alford* plea to one rape charge and Gardner responded, "Thank you, Your Honor." Because Gardner did not challenge the court's rejection of the plea deal, the issue was not preserved, and on appeal Gardner should have argued that an exception to the preservation rule applies to allow us to reach the merits of his argument. *State v. Algaza*, 2015 UT App 133, ¶ 40, 352 P.3d 107 (explaining that when a defendant does not preserve claims before the district court, the defendant "must establish plain error, ineffective assistance of counsel, or exceptional circumstances to warrant [appellate] review" (quotation simplified)). Because he has failed to argue the applicability of an exception, we do not reach this issue.

¶13 Finally, Gardner contends his counsel was constitutionally ineffective in numerous respects. "When a claim of ineffective assistance of counsel is raised for the first time on

appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Craft*, 2017 UT App 87, ¶ 15, 397 P.3d 889 (quotation simplified).

ANALYSIS

I. Motion to Suppress

¶14    Gardner contends he was denied the right to counsel during his interrogation in violation of his Fifth Amendment rights and therefore his motion to suppress should have been granted.[7] The Fifth Amendment of the United States Constitution commands that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

¶15    In *Arizona v. Miranda*, 384 U.S. 436 (1966), the United States Supreme Court articulated a prophylactic rule that

---

7. Gardner asks this court to review his Fifth Amendment claims under the "primacy approach," which provides that "a state court looks first to state constitutional law, develops independent doctrine and precedent, and decides federal questions only when state law is not dispositive." *West v. Thomson Newspapers*, 872 P.2d 999, 1006 (Utah 1994) (quotation simplified). But while there is sound logic to this approach, when a party fails to "adequately analyze[] the state constitutional claim as an issue separate and distinct from its federal counterpart, we will not address it." *State v. Rynhart*, 2005 UT 84, ¶ 12, 125 P.3d 938. Here, Gardner has not asserted that the Utah Constitution offers him more protection, and he has relied heavily on United States Supreme Court cases, as well as Utah Supreme Court cases analyzing the federal constitution, to support his arguments. We therefore do not address them under state constitutional law.

protects a suspect's Fifth Amendment rights against compelled self-incrimination, *id.* at 478–79, and requires that suspects be informed of their right to remain silent and their right to counsel before a custodial interrogation begins, *id.* at 444–45. After *Miranda* rights are read, "the suspect must unambiguously request counsel" in such a way that the "desire to have counsel present is sufficiently clear." *Davis v. United States*, 512 U.S. 452, 459 (1994). If at any point during the interrogation the suspect expresses a "desire to deal with the police only through counsel, [the suspect] is not subject to further interrogation by the authorities until counsel has been made available to him." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) (quotation simplified); *see also Miranda*, 384 U.S. at 444–45. But if "the [suspect] himself initiates further communication, exchanges, or conversations with the police," then he has effectively waived his right to counsel and the interrogation may continue. *Edwards*, 451 U.S. at 484–85.

¶16    At the outset of the interrogation, the officers informed Gardner of his *Miranda* rights, and Gardner stated he understood those rights. Then Gardner asked why he was being questioned, and First Officer responded that it was about Victim. Gardner immediately asked for his attorney, and the officers asked if he wanted the same attorney who was representing him in other matters. Gardner responded in the affirmative. Before the officers could leave to contact his attorney, Gardner started to explain that Victim and her mother had been threatening him for years about reporting inappropriate conduct between himself and Victim. He then told a long story about some problems with Victim's mother. First Officer eventually interrupted Gardner and asked again if he should try to reach Gardner's attorney, to which Gardner again responded in the affirmative. First Officer left the room to call the attorney, but Gardner continued to speak to Second Officer unsolicited about domestic issues with Victim's mother.

¶17    Once Gardner told the officers that Victim and her mother had been threatening to report him for engaging in

inappropriate conduct with Victim, without being asked a question by the officers, he effectively waived his right to counsel because he "initiate[d] further communication, exchanges, or conversations" with the officers specifically related to the crime for which he was being interrogated. *See id.*; *see also id.* at 485 ("[N]othing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to [a defendant's] voluntary, volunteered statements and using them against [the defendant] at the trial.").

¶18   Because Gardner waived his right to have counsel present during the interrogation, we must determine whether he waived this right knowingly and voluntarily. *See Miranda*, 384 U.S. at 444. To determine whether a defendant has knowingly and voluntarily waived his *Miranda* rights, we examine "the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983) (quotation simplified); *see also State v. Barrett*, 2006 UT App 417, ¶ 11, 147 P.3d 491. Gardner has not identified anything in the record that would support a conclusion that his waiver was not knowing and voluntary but instead relies solely on the argument that he did not waive his right to an attorney.

¶19   Our review of the record shows that Gardner was no stranger to the criminal justice system. Indeed, he had been convicted of similar sexual charges before. He was also "due in court on an unrelated crime" on the day of the interrogation. In addition, the officers spoke very little to Gardner prior to his confession, and Gardner, unprompted and uninterrupted, offered many statements related to Victim's accusations. The district court noted that Gardner's characterization of the interrogation as a "conversation or a talk" between Gardner and the officers was a "complete mischaracterization." We agree. The officers left Gardner alone in the interrogation room while attempting to contact his attorney, and Gardner called them back to talk. He explained he wanted his attorney for one purpose—to corroborate that he has problems with Victim's mother—but that

he did not need his attorney to address Victim's accusations. The officers asked no questions and let Gardner continue speaking uninterrupted. When Gardner asked questions specifically about the accusations, the officers refused to respond and said they were respecting his invocation of the right to counsel. By the time Gardner confessed, he had been in the interrogation room for just twenty minutes and had been offered food and a beverage. Although First Officer asked Gardner to think about whether there was a possibility the baby was his, Gardner had already initiated discussion of the matter for which he was being interrogated.

¶20   Under the circumstances of this case, Gardner knowingly and voluntarily waived his right to an attorney and therefore his confession following this waiver was not in violation of his Fifth Amendment rights. We conclude the district court properly denied his motion to suppress.

## II. Ineffective Assistance of Counsel

¶21   Gardner contends his counsel was constitutionally ineffective for numerous reasons not apparent in the record. Gardner filed a rule 23B motion to remand to the district court to supplement the record with non-speculative facts, *see* Utah R. App. P. 23B, which this court denied prior to setting a briefing schedule. Gardner now asserts—and refers us to his rule 23B motion—that at trial his defense counsel should have sought to admit other pieces of exculpatory evidence: evidence related to his sex offender treatment and polygraph test, evidence of one of the investigating officer's alleged misconduct, and a DVD of Victim's Children's Justice Center interview "where she denied [Gardner] had sexual relations with her."

¶22   To succeed on a claim of ineffective assistance of counsel, a defendant must show that counsel's deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Guzman*, 2018 UT App 93, ¶ 47. But if an issue is to be addressed on appeal, it must be adequately

briefed. Rule 24(a)(8) of the Utah Rules of Appellate Procedure requires an appellant's brief to contain an argument that explains, "with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Although inadequate briefing is not an absolute bar to our review of an argument on appeal, an appellant who "fails to devote adequate attention" to an argument and marshal the relevant evidence "will almost certainly fail to carry its burden of persuasion." *Rose v. Office of Prof'l Conduct*, 2017 UT 50, ¶¶ 64–65 (quotation simplified).

¶23　Here, Gardner's claim of ineffective assistance of counsel is inadequately briefed because there is no record support for his claim. Instead, he relies on his rule 23B motion for factual support. Because this court denied his rule 23B motion prior to setting the briefing schedule, we have already determined that Gardner did not meet his burden of proving there was sufficient evidence of deficient performance and resulting prejudice that would have warranted a remand for supplementation of the record. *See* Utah R. App. P. 23B; *see also State v. Crespo*, 2017 UT App 219, ¶ 47, 409 P.3d 99 (explaining that a rule 23B motion "(1) must be supported by affidavits alleging facts outside the existing record, (2) the alleged facts must be non-speculative, and (3) these allegations could support a determination that counsel's ineffectiveness prejudiced the result" (quotation simplified)). He therefore cannot succeed on an ineffective assistance of counsel claim based on the exact same facts, not within the record before us, that this court has already decided do not merit a remand to develop. *See IHC Health Services, Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (explaining that, "under the law of the case doctrine, a decision made on an issue during one stage of a case is binding in successive stages of the same litigation" (quotation simplified)); *Lewis v. Nelson*, 2017 UT App 230, ¶ 10, 409 P.3d 149 (explaining that the law of the case doctrine precludes appellate courts from addressing arguments that have already been disposed). As a result, his argument is inadequately briefed, and he therefore has failed to

carry his burden of persuasion on appeal. *See Rose*, 2017 UT 50, ¶ 64.

¶24    Gardner's briefing is further inadequate because he fails to argue prejudice, a necessary element of his ineffective assistance of counsel claim. *See State v. Vu*, 2017 UT App 179, ¶ 17, 405 P.3d 879. Instead, he relies on his conclusory statement that "[h]ad the defense attorney presented all the evidence that [Gardner] had requested it could have created reasonable doubt in the minds of the [jurors]." Gardner offers nothing to overcome the fact that he stipulated to the DNA test results establishing that he was the father of Victim's baby. Although Gardner argues that this "provides evidence of one count, not eleven counts" of rape, he fails to consider the totality of the evidence before the jury and then undermine the result. *See Strickland*, 466 U.S. at 695 ("[A] court hearing an ineffective assistance of counsel claim must consider the totality of the evidence before the judge or jury."). Gardner has also failed to marshal the evidence that supports Victim's distinct descriptions of more than eleven separate occasions when Gardner raped her, *see State v. Nielsen*, 2014 UT 10, ¶¶ 35, 40–41, 326 P.3d 645 (explaining that, while not a hard-and-fast rule, marshalling relevant evidence is a "natural extension of an appellant's burden of persuasion"), and then to explain how the evidence he claims should have been offered by defense counsel would have sufficiently countered the overwhelming evidence of guilt,[8] *see State v. Thompson*, 2014 UT App 14, ¶ 73, 318 P.3d 1221 ("While we more readily find errors to be harmless when confronted with overwhelming evidence of the defendant's guilt, we are more willing to reverse when a conviction is based on

---

8. When confronted with his stipulation to the DNA evidence that established he was the father of Victim's baby, Gardner testified at trial that his son and Victim's mother "artificially inseminated [Victim] with a medical syringe" after Victim's mother performed oral sex on him. No other evidence supports this self-serving and incredible assertion.

comparatively thin evidence." (quotation simplified)). Accordingly, he has failed to carry his burden to demonstrate prejudice.

CONCLUSION

¶25 We conclude the district court did not err in denying Gardner's motion to suppress because he knowingly and voluntarily waived his right to counsel during the interrogation prior to confessing. We further conclude that his challenge to the court's rejection of the plea agreement was not preserved and that he failed to argue that an exception to the preservation rule applies. Finally, Gardner's ineffective assistance of counsel claim was inadequately briefed because he failed to cite to record facts in support of his argument, instead relying on his rule 23B motion that this court denied, and he failed to argue prejudice. Accordingly, we affirm.

_____